UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CARPENTERS INDUSTRIAL COUNCIL, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 13-361 (RJL) |
| SALLY JEWELL, *et al.*,[1] | ) ) ) | **FILED** |
| Defendants. | ) | SEP 2 8 2015 |

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**MEMORANDUM OPINION**
(September ___, 2015) [Dkts. ## 40, 41, 43]

Before the Court are cross-motions for summary judgment by plaintiffs, plaintiff-intervenors, and defendants. Pls.' Mot. for Summ. J. [Dkt. # 40] ("Pls.' Mot."); Pl.-Intervenors' Mot. for Summ. J. [Dkt. # 41] ("Intervenors' Mot."); Defs.' Mot. for Summ. J. [Dkt. # 43] ("Defs.' Mot."). In these motions, the parties dispute the Fish and Wildlife Services' ("FWS") designation of critical habitat for the northern spotted owl under the Endangered Species Act. Upon due consideration of the parties' pleadings, the relevant law, and the entire record herein, I find that plaintiffs lack standing to bring this suit and, accordingly, plaintiffs' Motion for Summary Judgment [Dkt. # 40] is DENIED, plaintiff-intervenors' Motion for Summary Judgment [Dkt. # 41] is DENIED, defendants' Motion for Summary Judgment [Dkt. # 43] is GRANTED, and the case is DISMISSED.

---

[1] The complaint initially named Kenneth Salazar in his official capacity as the Secretary of the Interior as a defendant, who was succeeded by the current Secretary of the Interior, Sally Jewell.

1

## BACKGROUND

Plaintiffs brought suit against the Secretary of the Interior and the Director of the U.S. Fish and Wildlife Service ("FWS"), alleging that the FWS's designation in 2012 of more than 9.3 million acres of critical habitat for the northern spotted owl had violated various provisions of the Oregon and California and Coos Bay Wagon Road Grant Lands Act of 1937 ("O&C Act"), 43 U.S.C. § 1181a; Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. § 1732(a); the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-706; the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ *et seq.*; and the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, *et seq. See generally* Am. Compl., No. 13-361 [Dkt. # 34].

This case is one of three separate actions currently before the Court, at the summary judgment stage, involving challenges related to timber sales in the Pacific Northwest and habitat for the northern spotted owl. *See Carpenters Industrial Council, et al. v. Jewell, et al.*, No. 13-361 (filed on March 21, 2013) ("*CIC v. Jewell*"); *Swanson Group Mfg., LLC, et al. v. Director, Bureau of Land Management*, No. 14-211 (filed on Feb. 13, 2014) ("*Swanson v. BLM*" or "*Swanson II*"); *American Forest Resource Council, et al. v. Jewell*, No. 14-368 (filed on March 7, 2014) ("*AFRC v. Jewell*").[2] Prior to commencing these three actions, many of the same plaintiffs brought suit in *Swanson Group Mfg., LLC, et al. v. Salazar, et al.*, No. 10-1843 (filed on Oct. 29, 2010)

---

[2] Another case involving similar claims was dismissed voluntarily by plaintiffs. *See American Forest Resource Council, et al. v. Salazar, et al.*, No. 11-1174 [Dkt. # 44]. An additional case involving similar claims and many of the same plaintiffs was filed recently with this Court. *See Swanson et al. v. Jewell et al.*, No. 15-1419 (filed on August 31, 2015).

2

("*Swanson I*").[3] In *Swanson I*, I granted summary judgment in favor of the plaintiffs and found two federal agency actions to be unlawful: (1) the failure to offer for sale a declared amount of timber from two western Oregon districts, and (2) the development and use of an Owl Estimation Methodology. *See* Order and Mem. Op., No. 10-1843 [Dkts. ## 58, 59]. Defendants appealed that decision to our Circuit Court, which vacated the summary judgment ruling on the grounds that the plaintiffs in that case lacked standing, and, therefore, their challenges to agency actions must be dismissed. *See Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 238 (D.C. Cir. 2015).

In light of the standing decision in *Swanson I* and the significant overlap between the plaintiffs in that case and the three above-referenced actions, I ordered the parties in these three cases to show cause in writing why the cases should not also be dismissed for lack of standing. *See* Order to Show Cause, *CIC v. Jewell*, No. 13-361 [Dkt. # 82]; *Swanson II*, No. 14-211 [Dkt. # 28]; *AFRC v. Jewell*, No. 14-368 [Dkt. # 30]. In response to the show cause orders, plaintiffs in each of the three actions filed briefs accompanied by ten new declarations. *See CIC v. Jewell*, No. 13-361 [Dkts. ## 84-1–84-11][4]; *Swanson II*, No. 14-211 [Dkts. ## 30-1–30-11]; *AFRC v. Jewell*, No. 14-368 [Dkt. # 32-1–32-11]. Defendants then filed a response in each of the three cases. *See CIC v. Jewell*, No. 13-361 [Dkts. ## 88, 90]; *Swanson II*, No. 14-211 [Dkt. # 31]; *AFRC v. Jewell*, No. 14-368 [Dkt. # 33].

---

[3] American Forest Resource Council and Swanson Group Manufacturing LLC, both of which are plaintiffs in all three of the current actions, were plaintiffs in *Swanson I* as well. Douglas Timber Operation, Inc., another plaintiff in *Swanson I*, is a plaintiff in two of the three remaining actions.
[4] Plaintiff-intervenors in *CIC v. Jewell* moved for permission to respond to the show cause order, which the Court granted. *See* No. 13-361 [Dkt. # 84]; Minute Order, July 22, 2015.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In this case, where cross-motions for summary judgment are at issue, the Court draws all reasonable inferences regarding the assertions made in a light favorable to the non-moving party. *Union Neighbors United, Inc. v. Jewell*, 83 F. Supp. 3d 280, 285 (D.D.C. 2015). The Court will "grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Select Specialty Hosp.-Bloomington, Inc. v. Sebelius*, 774 F. Supp. 2d 332, 338 (D.D.C. 2011).

## ANALYSIS

"Article III of the Constitution confines the jurisdiction of the federal courts to actual 'Cases' and 'Controversies,' and . . . 'the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process.'" *Clinton v. City of New York*, 524 U.S. 417, 429–30 (1998) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Plaintiffs bear the burden of demonstrating they have standing to pursue their claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "[T]he irreducible constitutional minimum of standing" requires "[1] an injury in fact . . . which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical, . . . [2] a causal connection between the injury and the conduct complained

4

of . . . , [and] [3] it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560–61 (footnote, citations, and internal quotation marks omitted).

At the summary judgment stage, plaintiffs "can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.* at 561 (citations omitted). Statements of fact must be sufficiently specific to rise above the level of "conclusory allegations." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Although "general factual allegations of injury resulting from the defendant's conduct may suffice" to show standing at the motion to dismiss stage, *Lujan v. Defenders of Wildlife*, 504 U.S. at 561, at summary judgment, a court will not "'presume' the missing facts" necessary to establish an element of standing, *Lujan v. National Wildlife Federation*, 497 U.S. at 889.

"[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan v. Defenders of Wildlife*, 504 U.S. at 562 (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)). Indeed, "courts [only] occasionally find the elements of standing to be satisfied in cases challenging government action on the basis of third-party conduct." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 940 (D.C. Cir. 2004).

Furthermore, because plaintiffs here seek injunctive relief, they must show that they suffer an ongoing injury or face imminent future injury. *See Dearth v. Holder*, 641

F.3d 499, 501 (D.C. Cir. 2011). This creates "'a significantly more rigorous burden to establish standing'" than that on parties seeking redress for past injuries. *Chamber of Commerce v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011) (quoting *United Transp. Union v. ICC*, 891 F.2d 908, 913 (D.C. Cir. 1989)). That is, "to 'shift[ ] injury from conjectural to imminent,' the [plaintiffs] must show that there is a 'substantial . . . probability' of injury." *Id.* (first alteration in original) (quoting *Sherley v. Sebelius*, 610 F.3d 69, 74 (D.C. Cir. 2010) (internal quotation marks omitted)).

## I. Consideration of Newly Submitted Declarations

In *Sierra Club v. EPA,* our Circuit Court held that a petitioner whose standing is not self-evident "should establish its standing by the submission of its arguments and any affidavits or other evidence appurtenant thereto *at the first appropriate point* in the review proceeding." 292 F.3d 895, 900 (D.C. Cir. 2002) (emphasis added). Our Circuit Court further explained that "[a]bsent good cause shown, however, a litigant should not expect the court" to grant an "opportunity to submit post-argument affidavits further demonstrating" standing. *Id.*; *see also* Fed. R. Civ. P. 6(c)(2) ("Any affidavit supporting a motion must be served with the motion.").

Here, plaintiffs have had ample opportunity to establish standing. Indeed, in moving for summary judgment, plaintiffs put forward numerous declarations alleging facts and advancing arguments as to why they had standing.[5] The Order to Show Cause that I entered in this case was a request for the parties to state *reasons* why the existing

---

[5] *See* No. 13-361 [Dkts. ## 40-1–40-3, 42] (Declarations of Tony Hadley, Tom Odom, and Thomas L. Partin).

6

declarations were sufficient and why the case should not be dismissed pursuant to our Circuit Court's decision in *Swanson I*. The order was *not* an invitation to re-open the evidentiary record for new declarations and averments about the nature of plaintiffs' alleged harm. *See Sierra Club*, 292 F.3d at 901 ("Requiring the petitioner to establish its standing at the outset of its case is the most fair and orderly process by which to determine whether the petitioner has standing to invoke the jurisdiction of the court."). Unfortunately for plaintiffs, their response has not demonstrated the good cause necessary for the Court to accept new declarations after the close of summary judgment briefing, and, accordingly, I decline to consider them.

## II. Standing Analysis

Much of the substance of the original standing declarations that plaintiffs filed along with their motion for summary judgment concern the very same allegations of economic harm that were rejected by our Circuit Court in *Swanson I*. *Compare* Decl. of Thomas L. Partin ¶ 3, No. 10-1843 [Dkt. # 41-6] ("Many of AFRC's members have been unable to purchase timber sales, and have suffered economic loss, as a result of the failure of the Bureau of Land Management ("BLM") in recent years to sell the allowable sale quantity of timber it has determined and declared in its [resource management plans] for each of its western Oregon districts under the [O & C Act]."), *with* Decl. of Thomas L. Partin ¶ 6, No. 13-361 [Dkt. # 42] ("Many of AFRC's members have been unable to purchase sufficient timber sales, and have suffered economic loss, as a result of the Forest Service and BLM to sell the full amount of timber authorized by their governing land management plans and the Northwest Forest plan, and due to the very low levels of sales

authorized by those plans.").[6] These are indistinguishable from the conclusory allegations of economic harm that were insufficient in *Swanson I*. *See Swanson Grp. Mfg. LLC*, 790 F.3d at 242 ("Phillippi's averments that harm to his company was caused by BLM's failure to sell enough timber in Medford and may recur as a result of the same are general averments and conclusory allegations that are inadequate to demonstrate standing."). Regarding these kinds of averments, our Circuit Court explained in *Swanson I*:

> The only record evidence that Rough & Ready will be harmed by future shortfalls in Medford timber sales is Phillippi's averment that the company has suffered economic loss and hardship as a result of the sharp decrease in BLM Medford district timber sales in recent years. . . . Phillippi's averments that harm to his company was caused by BLM's failure to sell enough timber in Medford and may recur as a result of the same are general averments and conclusory allegations that are inadequate to demonstrate standing. . . .
>
> . . . .
>
> Neither is it self evident that the harm to Rough & Ready was caused by reduced timber sales in Medford. Phillippi does not indicate the extent of Rough & Ready's reliance on timber purchased from Medford . . . . Moreover, the record shows that the 2008 economic decline affected the timber market as demand for housing construction declined. Without information about Rough & Ready's past injury, Phillippi's declaration does not show Rough & Ready's economic losses fairly can be traced to BLM's failure to comply with the annual sales provision of the O & C Act, rather than to an independent source, such as the recession.

*Id.* at 242–43 (citations and quotation marks omitted).

---

[6] Even if I were to consider the newly filed declarations, many of their averments of economic harm post-date the filing of this lawsuit. *See, e.g.*, Decl. of Lee Sanders, No. 13-361 [Dkt. # 84-4]; Decl. of Rick Svilich, No. 13-361 [Dkt. # 84-6]. Standing, however, is assessed by considering facts at the time the complaint was first filed. *See Wheaton Coll. v. Sebelius*, 703 F.3d 551, 552 (D.C. Cir. 2012) (citing *Chamber of Commerce v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011)); *see also La Botz v. Fed. Election Comm'n*, 61 F. Supp. 3d 21, 28 (D.D.C. 2014) ("[S]tanding in the present action is ascertained from the facts as they existed when [the plaintiff] first filed his complaint in this Court . . . .").

Plaintiffs have presented no new arguments as to why their general averments and conclusory allegations of economic harm are now sufficient. Indeed, just as in *Swanson I*, plaintiffs cannot show that any of their economic losses are traceable to the designation of critical habitat instead of to an "independent source, such as the recession," or that their prediction of future injury is "more certain than those [the D.C. Circuit] has concluded are 'insufficient.'" *Id.*

However, plaintiffs do present at least one new theory of standing that was not before our Circuit Court in *Swanson I*—namely, that the critical habitat designation will lead to a "substantial probability of imminent future harm from catastrophic wildfire, disease and insect infestation starting with the designated critical habitat and spreading uncontrollably onto county forestland, reducing or destroying the economic value of those lands." Pls.' Response to Order to Show Cause 19–20, No. 13-361 [Dkt. # 84]. Unfortunately for plaintiffs, I disagree.

Plaintiffs fail to substantiate their contention that the designation of land as critical habitat imminently increases the risk of wildfire and disease and insect infestation. None of the plaintiffs purport to show *how* the designation of critical habitat on federal lands will lead to the increased risks of wildfire and disease on their non-designated private lands. Plaintiffs' original standing declarations vaguely mention risks of increased wildfire or disease on federal land, but these allegations are bereft of any evidence or support showing that the designation increases those risks. *See* Partin Decl. ¶¶ 11, 13, 15, No. 13-361 [Dkt. # 42]; Odom Decl. ¶ 11, No. 13-361 [Dkt. # 40-2]. Even if the Court were to consider the newly filed declarations, they would not suffice: they simply

9

presume that a "lack of management . . . will follow the designation," *see* Herrick Decl. ¶ 3, No. 13-361 [Dkt. # 84-2], or that a "predictable lack of future management within the designated areas" will result, *see* Payne Decl. ¶ 3, No. 13-361 [Dkt. # 84-10]. In plaintiffs' view, this lack of management will lead to increased forest fires on land designated as critical habitat, which will in turn impact their non-designated private land because the fires and disease will cross the boundaries into the places they own and operate. Importantly, however, none of the declarations point to any evidence that supports how the habitat designation itself will actually (let alone imminently) lead to a lack of management. *See Swanson Grp. Mfg. LLC*, 790 F.3d at 242–43 (plaintiffs must provide "details" that render a "prediction of future injury . . . more certain than those this court has concluded are 'insufficient'"). Plaintiffs have failed to show the imminence of their injury, as is their burden when seeking an injunction. *Chamber of Commerce v. EPA*, 642 F.3d at 200 ("[T]o shift injury from conjectural to imminent, the [plaintiffs] must show that there is a substantial probability of injury.") (alterations, citations, and quotation marks omitted).

Our Circuit Court has found that an increased risk of wildfire on federally managed land can potentially support standing for private plaintiffs, but *only* where there was evidence that an alternative chosen by the Forest Service for managing a specific area in which the plaintiffs operated in fact had a numerically higher risk of wildfire. *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1233–35 (D.C. Cir. 1996); *see also Fed. Forest Res. Coal. v. Vilsack*, --- F. Supp. 3d ---, No. 12-1333, 2015 WL 1906022, at *17 (D.D.C. Apr. 28, 2015) (denying standing based on unsubstantiated

claims of wildfire risk on federal land, stating "it is clear that the D.C. Circuit's standing conclusion [in *Mountain States*] was based on extensive and detailed evidence from the [environmental impact statement] regarding such increased risk of wildfire"). Nothing in the current case even comes close to approximating the evidence and proof that was at issue in *Mountain States*. Here, plaintiffs offer no evidence that the mere designation of land as critical habitat leads to lack of management and a measurably increased risk of wildfire and disease in any given location.[7] Indeed, the argument that a designation of critical habitat will lead to lack of management, which will lead to forest fires and disease on federal land, which will then jump across boundaries onto lands owned or operated by plaintiffs, is a series of logical leaps with too little support to show that future harm is "imminent" or "likely" to occur. *See Vilsack*, 2015 WL 1906022, at *17 ("Plaintiffs rely solely on *historical* figures showing that wildfires have increased as timber harvesting has decreased over the last 20 years. . . . [T]he instant record simply fails to support the assumption that there is any causal connection between decreased harvesting and increased wildfires.").[8] Accordingly, I find that plaintiffs have failed to make the requisite showing for Article III standing to challenge the critical habitat designation.

---

[7] The Partin Declaration points to one instance of wildfire spreading from federal land that allegedly had no active management, but, notably, Partin does not claim that the land at issue was ever designated as critical habitat. *See* Partin Decl. ¶ 15, No. 13-361 [Dkt. # 42].

[8] Plaintiffs' logical leap is further exposed by the final habitat rule itself, which contemplates active management of federal land. *See Designation of Revised Critical Habitat for the Northern Spotted Owl*, 77 Fed. Reg. 71,876, 71,908 (Dec. 4, 2012) (stating "long-term northern spotted owl recovery could benefit from forest management where the basic goals are to restore or maintain ecological processes and resilience"; in drier, more fire-prone areas, "more active management may be required to reduce the risk to the essential physical or biological features from fire, insects, disease, and climate change, as well as to promote regeneration following disturbance").

Plaintiff-intervenors—Skamania, Lewis, and Klickitat counties[9]—separately moved for leave to file a response to the order to show cause why the case should not be dismissed for lack of standing, which I granted. *See* Min. Order, July 22, 2015, No. 13-361. In arguing that they have sufficiently demonstrated their standing to challenge the critical habitat designation, plaintiff-intervenors primarily rely upon *Douglas County v. Babbitt*, 48 F.3d 1495, 1501 (9th Cir. 1996), which held that there was standing by adjoining counties for failure to properly manage for insect and disease control on federal lands. *See* Pl.-Intervenors' Response to Order to Show Cause 20, No. 13-361 [Dkt. # 85]. However, as discussed above, under our Circuit Court's line of cases about wildfire standing, plaintiff-intervenors have failed to make the requisite showing that anything in particular about the decision to designate critical habitat—which is the only agency action being challenged here—will imminently and with substantial probability lead to lack of management, which will in turn lead to a measurable increased risk of forest fires within the counties that is not attributable to any source other than the designation itself. *See Vilsack*, 2015 WL 1906022, at *17 (applying *Mountain States* and finding insufficient support for allegation that decreased harvesting leads to increased wildfires).

Lastly, plaintiffs fail to demonstrate organizational standing based on the standing of any member. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Just as in *Swanson I*, plaintiffs fail to present evidence identifying members that have "suffered the requisite harm" from the habitat designation. *See Summers v. Earth*

---

[9] Plaintiff-intervenors are counties that contain within their borders approximately one third of the three million acres of critical habitat designated for the spotted owl.

*Island Inst.*, 555 U.S. 488, 499 (2009); *Chamber of Commerce v. EPA*, 642 F.3d at 199.

Therefore, in accordance with our Circuit Court's decision in *Swanson I*, I find that plaintiffs have not demonstrated economic injury sufficient to have Article III standing to challenge the habitat designation.

## CONCLUSION

Thus, for all of the foregoing reasons, plaintiffs' motion for summary judgment is DENIED, plaintiff-intervenors' motion for summary judgment is DENIED, defendants' motion for summary judgment is GRANTED, and this case is DISMISSED for lack of standing. An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge